# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ALEX ROSA**,<br><br>    Plaintiff,<br><br>v.<br><br>**CITY OF NEWBERG, PAUL RAPET,** personally, **BRIAN CASEY**, personally,<br><br>    Defendants. | Case No. 18-0037-YY<br><br>**ORDER** |

Leonard R. Berman, 9220 SW Barbur Boulevard, Suite 119, Box 180, Portland, OR 97219. Of Attorneys for Plaintiff.

Gerald L. Warren and Kenneth S. Montoya, GERALD WARREN LAW, 901 Capitol Street NE, Salem, OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Alex Rosa ("Rosa") filed this action against Defendants City of Newberg ("the City"), Newberg Police Chief Brian Casey, and Officer Paul Rapet ("Officer Rapet"). Rosa alleges a claim under 42 U.S.C. § 1983 against Officer Rapet for violations of Plaintiff's Fourth Amendment rights (wrongful detention and excessive force) and a *Monell* claim against the City. Rosa also asserts state law claims of negligence against the City and Officer Rapet, false

imprisonment against all defendants, and battery against Officer Rapet. United States Magistrate Judge Youlee Yim You issued Findings and Recommendation in this case on August 27, 2019. ECF 35. Judge You recommended that Plaintiff's motion for partial summary judgment be denied, Defendants' motion for summary judgment be granted, and that the case be dismissed. This Court agrees that Plaintiff's motion for partial summary judgment should be denied but declines to adopt Judge You's recommendation that Defendants' motion for summary judgment be granted in full for the reasons explained below.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. See Thomas v. Arn, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); United States. v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review de novo magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] sua sponte . . . under a de novo or any other standard." Thomas, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

Plaintiff timely filed an objection (ECF 41), to which Defendants responded. ECF 42. Plaintiff objects to the portion of Judge You's recommendation finding that there is no genuine issue of material fact and recommending summary judgment in favor of Defendants.

**STANDARDS**

**Summary Judgment**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence,

regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## BACKGROUND

Rosa was a 17-year-old student at Newberg High School on January 15, 2016. This case stems from an altercation between Rosa and another student in the parking lot of Newberg High School and Officer Rapet's subsequent arrest of Rosa.

At approximately 2:35 p.m. on January 15, 2016, Newberg High School assistant principal Alaina Santana saw Rosa walking toward the north parking lot of the school. Santana Decl. ¶ 3, ECF 25. Santana followed Rosa and found him in between school buses yelling and gesturing angrily toward another male student, J.G. *Id*. ¶ 4. Santana walked between Rosa and J.G. and told J.G. to walk away. *Id*. ¶ 6. As J.G. was walking away, Rosa started to follow him despite being blocked by a third male student. *Id*. Plaintiff punched J.G. in the face and inadvertently hit the third student who had been trying to hold plaintiff back. *Id*.

In his declaration, Rosa states that he "got into a tussle with a fellow student." Rosa Decl. ¶ 2, ECF 21. At his deposition, Rosa testified that he "got into a fight" with J.G. but denied assaulting him. Rosa Dep., ECF 28-1 at 22. He stated that he did not "even hit him hard enough to make a mark, or if there was enough to make a mark, it was just you know, like, a red thing

that goes away after five minutes just from like, (slapping wrist), you know." *Id*. at 23. At the time, Rosa was 5'6" tall, and about 160 pounds. Rosa Decl. ¶ 2, ECF 21.

Ten to 15 minutes later, Officer Rapet arrived on the scene and began questioning Rosa in the parking lot while his family observed from a van nearby. *Id*. Rosa claims he did not refuse any orders or directions, nor did he threaten harm or make any hostile or aggressive actions toward Officer Rapet or anyone in the near proximity. *Id*. ¶ 3. He did not threaten to escape or make any attempts to escape, and he did not pull away from Officer Rapet. *Id*. ¶ 4.

At his deposition, Rosa explained that he was nervous during his interaction with Officer Rapet because this was his "first ever run-in" with the police, and Officer Rapet had taken out the handcuffs. Rosa Dep. 22, ECF 28-1, at 22. Rosa testified, "I guess he was afraid of me because my forearms were too tense." *Id*. Rosa contends that Officer Rapet then, "[w]ithout warning, while standing outside the cop car… took [him] to the ground head first." Rosa Decl. ¶ 5, ECF 21. Rosa's head, knee, and stomach hit the concrete and he suffered a concussion. *Id*. At his deposition, Rosa testified that the takedown caused him to "black out." Rosa Dep., ECF 28-1 at 27. Officer Rapet also put his knee in the back of Rosa's head while he handcuffed him. *Id*.

Rosa states that he "wanted medical attention but Rapet refused a 911 call by my mother." Rosa Decl. ¶ 6, ECF 21. Rosa claims he has "suffered exacerbated emotional issues since this event." *Id*. ¶ 7. His "anxiety and depression is much worse," he "used to hold a job and now . . . cannot," and he "cannot focus and keep concentration." *Id*.

Rosa's mother, Alena Greenlaw, submitted a declaration supporting Rosa's version of events. Greenlaw Decl. ¶ 3, ECF 22. Greenlaw did not hear her son refuse any orders or directions or see or hear him threaten harm or make any hostile or aggressive gestures to Officer

Rapet or anyone in near proximity. *Id*. ¶ 4. According to Greenlaw, Rosa did not threaten to escape or make any attempts to escape. *Id*. She never saw Rosa pull away from Officer Rapet. *Id*. Greenlaw describes what occurred as "a sudden takedown to the ground with no prior provocation or warning." *Id*. She states that, "without warning, while standing outside the cop car, Rapet took [Rosa] to the ground head first." *Id*. ¶ 5. Before the takedown occurred, Officer Rapet "seemed very agitated and aggressive and spoke to us with a balled up fist." Id. ¶ 6. Greenlaw called 911, but Officer Rapet canceled her call to 911. *Id*. ¶ 7. According to Greenlaw, Rosa "has suffered exacerbated emotional issues since this event… He has not been the same since his concussion at the hands of Rapet. He used to be able to maintain a job and cannot do so. He is very anxious and depressed, and previous mental health issues have been severely aggravated." Id. ¶ 8.

Officer Rapet has been a Newberg police officer since 2011. Rapet Decl. ¶ 2, ECF 26. He was dispatched to Newberg High School at approximately 2:43 p.m. on the report of a disturbance involving an out of control student. *Id*. ¶ 4. As Officer Rapet was speaking with plaintiff, the principal of Newberg High School told Officer Rapet that J.G., the student with whom Rosa had fought, was in the infirmary getting treatment for an eye injury. *Id*. ¶ 7.

Officer Rapet asked Rosa how J.G. injured his eye, and Rosa replied, "Ok, I might have punched him at the end." *Id*. Rosa later stated, "I guess I punched him." Officer Rapet observed a swollen knuckle on plaintiff's right hand. *Id*. Officer Rapet told Rosa that based on his statements, he was being detained while Officer Rapet figured out the extent of J.G.'s injuries. *Id*. ¶ 9.

While speaking with Greenlaw, Rosa's mother, Officer Rapet received a radio transmission from Sergeant Eric Ronning who said something similar to, "You have a good

assault four." *Id*. Officer Rapet understood this to mean that based on J.G.'s injuries, the elements for Or. Rev. Stat § 169.160 (Assault in the Fourth Degree) were met.

In Officer Rapet's telling, he then returned to his police car, opened the back door, and asked plaintiff to step out of the car. *Id.* ¶ 11. As Officer Rapet tried to place handcuffs on Rosa, Officer Rapet told Rosa not to tense up and to relax, and Rosa shouted something similar to, "No, I don't want to." *Id.* Officer Rapet repeated himself and told plaintiff to calm down and not tense up but, Rosa started to pull his arms away to prevent Officer Rapet from placing him in handcuffs. *Id.* Officer Rapet told Rosa not to resist, and Rosa grunted as he exerted himself in an attempt to free his arms. *Id.* Officer Rapet was unsure whether Rosa intended to flee or fight. Officer Rapet took Rosa to the ground and handcuffed him.

The parties agree that Officer Rapet gave no warning before taking Rosa to the ground. Officer Rapet testified at his deposition that Rosa could have been a threat if he had been able to get one or two hands loose or could have escaped and assaulted someone. *Id*. at 4-5, ECF 29-1, at 3.

## DISCUSSION

### A. *Monell*, False Arrest, and False Imprisonment Claims.

Plaintiff concedes that his *Monell*, false arrest, and false imprisonment claims fail. ECF 30. Accordingly, those claims are dismissed.

### B. Excessive Force

"In evaluating a Fourth Amendment Claim of excessive force, courts ask 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them.'" *Glenn v. Wash. Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Evaluating the objective reasonableness of the use of force in a given situation "requires a careful balancing of 'the nature and quality of the intrusion on the

PAGE 7 – ORDER

individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). When conducting this balancing, however, the Court must bear in mind "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. For this reason, the objective reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

"Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) (quotations and citations omitted); *see also Santos*, 287 F.3d at 853 ("police misconduct cases almost always turn on a jury's credibility determinations").

Here, the claimed intrusion on Rosa's Fourth Amendment interests was a takedown arrest that resulted in a concussion. In determining the governmental interests at stake, *Graham* provides a non-exhaustive list of factors to consider, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1091 (9th Cir. 2013) (citing *Graham*, 490 U.S. at 396).

Both Defendants and Plaintiff moved for summary judgment on the excessive force claim. Judge You recommended summary judgment be granted in Defendants' favor on the excessive force claim because Rosa resisted arrest and posed a threat to Officer Rapet.

Defendants point to Rosa's deposition where he indicates that he may have tensed up his forearms to prevent Officer Rapet from handcuffing him:

> Q: It sounds like you were tensed up, you said, with your arms.
>
> A: Apparently, because this had been my first ever run-in with legal, police, anything. And I was nervous because he was – like I said, he had just taken out the handcuffs. He was about to handcuff me and then he paused and was like – I don't know. I guess he was afraid of me because my forearms were too tense. It doesn't really make sense.

ECF 28-1 at 22. Defendants read this passage as an admission that Rosa tensed his arms and therefore physically resisted Officer Rapet's efforts to handcuff him.

The Court disagrees. First, the passage is ambiguous. Rosa does not state that he intentionally tensed his arms to avoid arrest. Rather, he appears to state the opposite: that the tension was an involuntary response to the stress of being arrested for the first time. Second, Rosa's sworn declaration expressly states that he never refused any of Officer Rapet's orders or directions, nor did he ever pull away from Officer Rapet. Rosa's mother, Alena Greenlaw, states in her declaration that the arrest "was a sudden takedown to the ground with no prior provocation or warning." The declarations and the ambiguity of the deposition testimony create a fact dispute for the jury as to whether Rosa was indeed resisting arrest.

Even if Rosa conceded that he tensed his arms, it does not necessarily follow that Officer Rapet's use of force was reasonable. Defendants cite *Arpin v. Santa Clara Valley Transportation Agency* and *Forrester v. City of San Diego* to argue that Officer Rapet's use of force was objectively reasonable. These cases are distinguishable. In *Arpin*, the plaintiff "stiffened her arm and attempted to pull free." 261 F.3d 912, 921 (9th Cir. 2001). Here, Rosa and his mother's declarations expressly state that he made no attempt to pull free. Furthermore, the plaintiff in *Arpin* was arrested without injury, while Rosa claims he suffered a concussion. *Forrester* is

PAGE 9 – ORDER

inaposite because that Court did "no more than let a jury verdict stand because there was evidence on which the majority believes rational jurors could have based a verdict." 25 F.3d 804, 809 (9th Cir. 1994) (Kleinfeld, J., dissenting). *Forrester* did not establish as a matter of law that the force used in that case was objectively reasonable. Furthermore, the Court in *Forrester* noted that "the nature and quality of the intrusion upon the arrestees' personal security was less significant than most claims of force. The police did not threaten or use deadly force and did not deliver physical blows or cuts." *Id.* at 807. Officer Rapet used more force than that used in *Forrester*.

Judge You also found that Rosa posed an immediate threat to the safety of the officers and others. There is, however, a genuine fact dispute on this point that is more appropriately decided by the jury. While there was evidence that Rosa had assaulted another student shortly before Officer Rapet arrived, a reasonable jury could find that there was no immediate or significant threat to Officer Rapet's safety at the time of the arrest. Rosa is 17 years old, 5'6", and 160 pounds. Officer Rapet appeared on the scene 10 to 15 minutes after the fight ended. ECF 28-1 at 22. Rosa's and Greelaw's declarations paint Rosa as compliant and Officer Rapet as "agitated and aggressive," and state that the takedown occurred without provocation or warning. Greenlaw Decl. ¶ 6, ECF 22.

In balancing the intrusion on Rosa's interests and the government's interests, Judge You found that Officer Rapet's takedown was objectively reasonable as a matter of law. There are, however, significant factual disputes in this case. Most significantly, Rosa's declaration directly contradicts Defendants' theory that Rosa was uncooperative and posed a threat to Officer Rapet. The jury must make a credibility determination at trial to decide if Officer Rapet's use of force was objectively reasonable.

## C. Qualified Immunity

Even if there were a constitutional violation, a government official may nonetheless be entitled to qualified immunity if the right violated was not clearly established at the time of the incident. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The doctrine of qualified immunity protects government officials from liability for civil damages." *Wood v. Moss*, 134 S.Ct. 2056, 2066-67 (2014); *Krainski v. Nevada ex. Rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Whether qualified immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts. And reasonableness of official action, in turn, must be 'assessed in light of the legal rules that were clearly established at the time [the action] was taken.'" *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866 (2017) (citation omitted) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) and *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

In *Saucier*, the Supreme Court outlined a two-step process for determining the applicability of the qualified immunity doctrine. 533 U.S. at 200. The first step is to determine "whether a constitutional right would have been violated on the facts alleged." *Id*. The second step is to determine "whether the right was clearly established." *Id*. Regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not clearly established or the officer could have reasonably believed that his particular conduct was lawful. *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991).

The parties dispute some facts necessary to decide the issue of qualified immunity on excessive force. Namely, Defendants argue that Rosa resisted being handcuffed and tried to pull

PAGE 11 – ORDER

away and free his arms. Officer Rapet stated that he was unsure whether Rosa resisted arrest because he wanted to flee or because he wanted to fight Officer Rapet. Rosa, however, says that he was fully compliant with Officer Rapet's orders and did not pull away. He also states that Officer Rapet took him to the ground without provocation or warning. Where important factual disputes exist, "summary judgment is appropriate only if Defendants are entitled to qualified immunity on the facts as alleged by the non-moving party." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007).

The facts of this case, viewed in the light most favorable to Rosa, would be sufficient for a reasonable jury to find that Officer Rapet's conduct violated the Fourth Amendment's prohibition on excessive force. Rosa and his mother contend that Rosa complied with all of Officer Rapet's directions and did not resist arrest. Rather, they describe Officer Rapet as the aggressor and contend that he used such violent force in arresting Rosa that he suffered a concussion. Rosa bears the burden, of course, of ultimately proving these facts to a jury. But if Rosa's telling is accurate, Officer Rapet violated Rosa's constitutional rights.

To determine whether a government official's conduct violates clearly established law, "a court must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted." *Ziglar*, 137 S.Ct. at 1867. To be clearly established, "[i]t is not necessary . . . that the very action in question has previously been held unlawful. That is, an officer might lose qualified immunity even if there is no reported case directly on point. But in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent. *Id.* (citations and quotation marks omitted). "The 'clearly established' requirement 'operates to ensure that before they are subject to suit, [government officials] are on notice their conduct is unlawful.'" *Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009) (quoting *Hope v. Pelzer*, 536

U.S. 730, 739 (2002)) (alteration in original). Thus, the key inquiry in determining whether an officer has qualified immunity is whether the officer had "fair warning" that his conduct was unconstitutional. *Hope*, 536 U.S. at 741; *see also Saucier*, 533 U.S. at 202 (noting that the law need not be a "precise formulation of the standard" as long as "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand"); *Ellins*, 710 F.3d at 1064 ("Rather, the relevant question is whether 'the state of the law at the time gives officials fair warning that their conduct is unconstitutional.'" (quoting *Bull v. City & Cty. of San Francisco*, 595 F.3d 964, 1003 (9th Cir. 2010) (en banc) ("[T]he specific facts of previous cases need not be materially or fundamentally similar to the situation in question."))).

A reasonable officer would have been on notice that the alleged use of force in this case could be unconstitutional. In evaluating whether the law was clearly established, "we need look no further than *Graham*'s holding that force is only justified when there is a need for force." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007). Rosa asserts that Officer Rapet's takedown maneuver was unjustified under the circumstances, *i.e.*, that there was no need for Officer Rapet to use such force, which gave Rosa a concussion. Officer Rapet is therefore not entitled to qualified immunity.

**D. Negligence**

The parties have filed cross-motions for summary judgment on Rosa's negligence claims against the City and Officer Rapet. ECF 20, ECF 24. The Court adopts Judge You's findings and recommendation on these claims. For the reasons stated in Judge You's opinion, summary judgment is appropriate on these claims.

### E. Battery

The parties also filed cross-motions for summary judgment on Rosa's battery claim against Officer Rapet. Plaintiff contends that his claim succeeds as a matter of law because Officer Rapet had no justification for his use of force. But the evidence, viewed in the light most favorable to Officer Rapet, the non-moving party, provides sufficient facts for a reasonable jury to decide that Officer Rapet's use of force was lawful. Defendants claim that Rosa was uncooperative and resisted arrest. They also claim that Rosa presented a danger to Officer Rapet's safety. This is a factual determination that cannot be determined at summary judgment.

Similarly, Defendants' motion for summary judgment on the battery claim is also unsuccessful because the facts, viewed in the light most favorable *to Rosa*, provide sufficient evidence for a jury to determine that Officer Rapet's use of force was not authorized by Oregon statute and constituted the tort of battery. *See Ballard v. City of Albany*, 221 Or. App. 630, 641 (2008) ("the use of excessive force by a police officer in carrying out an arrest can give rise to civil liability for battery").

## CONCLUSION

Plaintiff's motion for partial summary judgment (ECF 20) is DENIED. Defendants' motion for summary judgment (ECF 24) is GRANTED as to the *Monell*, false arrest, false imprisonment, and negligence claims and DENIED as to the excessive force and battery claims.

**IT IS SO ORDERED**.

DATED this 30th day of January, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge