# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ALEX ROSA**, | Case No. 3:18-cv-37-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CITY OF NEWBERG**, *et al*., | |
| Defendants. | |

Leonard R. Berman, LAW OFFICE OF LEONARD R. BERMAN, 9220 SW Barbur Boulevard, Suite 119, Box 180, Portland, OR 97219. Of Attorneys for Plaintiff.

Gerald L. Warren and Kenneth S. Montoya, LAW OFFICE OF GERALD L. WARREN AND ASSOCIATES, 901 Capitol Street NE, Salem, OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Alex Rosa (Mr. Rosa) has sued Defendants City of Newberg (City), Newberg Police Chief Brian Casey (Chief Casey), and Newberg Police Officer Paul Rapet (Officer Rapet), based on events that occurred when Mr. Rosa was a high school student. Mr. Rosa alleges a federal claim under 42 U.S.C. § 1983 against Officer Rapet for violating Mr. Rosa's Fourth Amendment rights (excessive force and wrongful detention) and a *Monell* claim against the City. Mr. Rosa also asserts state claims of negligence against the City and Officer Rapet, false arrest against all defendants, and battery against the City and Officer Rapet.

The Court has denied Plaintiff's motion for summary judgment. The Court also has granted in part and denied in part Defendants' motions for summary judgment. The Court

dismissed Plaintiff's federal claim under *Monell*, Plaintiff's federal claim for wrongful detention, and Plaintiff's state claims for false arrest and negligence. Thus, all that remains for trial are: (1) Plaintiff's federal claim under § 1983 against Officer Rapet, alleging excessive force; and (2) Plaintiff's state claim against both Officer Rapet and the City, alleging battery. The Court has scheduled a three-day jury trial to begin on July 20, 2021. In preparation for trial, Plaintiff has identified Mr. Christopher Hutt (Mr. Hutt) as an expert witness on the issue of use of force. Pending before the Court is Defendants' motion *in limine*, seeking to exclude all opinion testimony from Mr. Hutt. For the reasons discussed below, Defendants' motion is denied.

## STANDARDS

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Under *Daubert*[1] and its progeny, including *Daubert II*,[2] a district court's inquiry into admissibility is a flexible one." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[2] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir. 1995).

Cir. 2014) (citing *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th

Cir. 2013)). In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact

finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quotation marks omitted). "[T]he

trial court must assure that the expert testimony both rests on a reliable foundation and is relevant

to the task at hand." *Id.* at 564 (quotation marks omitted). "Expert opinion testimony is relevant

if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if

the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant

discipline." *Id.* at 565 (quotation marks omitted). "Shaky but admissible evidence is to be

attacked by cross examination, contrary evidence, and attention to the burden of proof, not

exclusion." *Id.* at 564. The judge must "screen the jury from unreliable nonsense opinions, but

not exclude opinions merely because they are impeachable." *City of Pomona*, 750 F.3d at 1043

(quoting *Alaska Rent-A-Car*, 738 F.3d at 969). In short, "[t]he district court is not tasked with

deciding whether the expert is right or wrong, just whether his testimony has substance such that

it would be helpful to a jury." *Id.* at 969-70 (alteration in original) (quoting *Alaska Rent-A-

Car*, 738 F.3d at 969-70).

Further, the court must assess an expert's reasoning or methodology, using, when

appropriate, criteria such as testability, publication in peer-reviewed literature, known or

potential error rate, and general acceptance. *See Estate of Barabin v. AstenJohnson, Inc*., 740

F.3d 457, 463-64 (9th Cir. 2014) (en banc). But these factors are "meant to be helpful, not

definitive, and the trial court has discretion to decide how to test an expert's reliability as well as

whether the testimony is reliable, based on the particular circumstances of the particular case."

*Primiano*, 598 F.3d at 564 (citations and quotation marks omitted). For non-scientific experts,

those factors "simply are not applicable" and the reliability of testimony often "depends heavily

on the *knowledge and experience* of the expert, rather than the methodology or theory behind it."
*Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (quoting
*Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1169 (9th Cir. 2002) (emphasis added in
*Hangarter*). Nonetheless, although "*Daubert* and *Kumho Tire* may be harder to apply when the
expert testimony is 'experience-based' rather than 'science-based[,]' . . . any such difficulty
cannot simply lead to a "that goes to weight, not admissibility" default[.]" *United States v.
Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020).

The test "is not the correctness of the expert's conclusions but the soundness of his
methodology." *Primiano*, 598 F.3d at 564 (quotation marks omitted). "The objective of
[*Daubert's* gatekeeping requirement] is to ensure the reliability and relevancy of expert
testimony. It is to make certain that an expert, whether basing testimony upon professional
studies or personal experience, employs in the courtroom the same level of intellectual rigor that
characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 149. When
an expert meets the threshold established by Rule 702, the expert may testify and the fact finder
decides how much weight to give that testimony. *Primiano*, 598 F.3d at 565. Challenges that go
to the weight of the evidence are within the province of a fact finder, not a trial court judge. *City
of Pomona*, 750 F.3d at 1044. "A district court should not make credibility determinations that
are reserved for the jury." *Id*.

## BACKGROUND

On January 15, 2016, Officer Rapet was dispatched to Newberg High School in response
to a physical altercation between Mr. Rosa and another student. Officer Rapet arrested Mr. Rosa
for allegedly assaulting the other student. While attempting to handcuff Mr. Rosa, Officer Rapet
forcibly took Mr. Rosa to the ground, allegedly injuring him. Officer Rapet contends that his
"forcible take-down" was a necessary response to Mr. Rosa's resistance to being handcuffed.

Mr. Rosa has identified Mr. Hutt as an expert witness on the issue of use of force. In Mr. Hutt's expert report, he describes his relevant background. According to Mr. Hutt, he:

- has worked as a criminal defense investigator for 13 years and is currently employed by the Metropolitan Public Defender in Multnomah County, where he reviews cases involving the use of force and acts as the in-house subject matter expert;

- has a private practice where he provides case evaluation, examination and analysis of use-of-force reporting, drafting of advisory work-product and expert witness opinion reports, expert witness testimony, investigation and interviews on the use of force, creation of trial exhibits on the use of force, and more;

- previously worked for more than five years as a reservist police officer and reservist jail deputy;

- completed three full iterations of training on defensive tactics and use of force from training academies recognized by the Oregon Department of Public Safety Standards & Training (DPSST);

- previously worked for one year as a civilian using use of force as a loss prevention officer and a nightclub security officer; and

- provides trainings to public defenders, investigators, law students, and others on police joint-locks/control holds, examining use-of-force reports, and firearms, among other things.

## DISCUSSION

Defendants have moved *in limine* to exclude all opinion testimony by Mr. Hutt on the grounds that he is not sufficiently qualified as an expert, his opinions are not likely to assist the jury in their determination, and his testimony is likely to prejudice, confuse or mislead the jury because it is unreliable and merely his subjective opinions. Plaintiff opposes Defendants' motion.

Evaluating the reliability of non-scientific expert testimony is generally highly dependent on the knowledge and experience of the expert. *Hangarter*, 373 F.3d at 1017. A court, however, must still consider whether that expert "provided a reliable basis for his [or her] opinion." *Valencia-Lopez*, 971 F.3d at 901. In an excessive force case, use-of-force experts are often retained to help the factfinder understand the standard of reasonableness to which an officer using force is held.

Defendants contend that Mr. Hutt does not have sufficient practical experience in use of force and that he has not received the same training as police officers, such that his opinions are not reliable and are likely to mislead the jury. Specifically, Defendants argue that Mr. Hutt: (1) has only acted as a jail deputy and a police officer in a reservist capacity, meaning that he was not a salaried and full-time employee but instead a volunteer; (2) has never trained police officers; (3) has never performed an arrest or witnessed a resisting arrestee being taken to the ground; (4) has never attended the DPSST basic academy; (5) has never been admitted as an expert in federal court; and (6) has served only once as an expert in a case in state court involving use of force by private security. In addition to objecting to Mr. Hutt's qualifications, Defendants also highlight that he did not review Plaintiff and another witness's deposition testimony before drafting his expert report, which could make his conclusions unreliable and therefore inadmissible.

Mr. Hutt, as described in his *curriculum vitae*, deposition testimony, and expert report, has extensive experience learning about, applying, and teaching use-of-force principles, especially in a criminal defense context. Mr. Hutt has attended three training programs by DPSST-certified academies related to the use of force and defensive tactics: The Clackamas County Sheriff's Office Inter-Agency Patrol Reserve Academy, the Washington County Sheriff's Office Inter-Agency Patrol Reserve Academy, and the Washington County Sheriff's Office Jail Reserve Academy. These training programs are months-long courses with multiple nights per week of training and are certified by the DPSST. Mr. Hutt also explained that his police officer training as a sworn law enforcement reserve officer was conducted at the reserve academy and that training is the equivalent of the DPSST basic academy for non-reservist police officers. That these trainings were not taken at the DPSST basic academy do not invalidate them

as source of expert knowledge or render Mr. Hutt's testimony unreliable. Further, Mr. Hutt has been exposed to and worked in the field use of force in Oregon for more than a decade, including his time volunteering as a reservist at the Gladstone and Hillsboro police departments and the Washington County jail.

That Mr. Hutt has not personally been involved in arrests and "take downs" also does not render his testimony unreliable. In *Atencio v. Arpaio*, the District of Arizona found that a use-of-force expert who had worked as a police officer "on the street" was qualified to testify about the reasonableness of use of force by a correctional officer in a jail. 2015 WL 11117187, at *10 (D. Ariz. Jan. 15, 2015). Questions about the expert's ability to form opinions about reasonable use of force in a prison context, with which he was not familiar, went to the weight rather than the admissibility of his testimony. *Id.* Similarly, in *Estate of Casillas v. City of Fresno*, the court found a person who had never testified as an expert on police use of force, had worked decades earlier as a police officer in a small rural town in another state, had largely focused on securities fraud investigations since the 1990s, and had no formal training in the standards applicable to California law enforcement personnel was nevertheless qualified to testify as an expert on use of force by a California police officer. 2019 WL 586747, at *5-7 (E.D. Cal. Feb. 13, 2019). Courts have held that as long as the expert's testimony is founded in sufficient knowledge or experience and is based on reliable methods, an expert need not have identical practical experience as the subject upon which the expert opines. Here, Plaintiff is not offering Mr. Hutt's testimony based on Mr. Hutt's personal experience using force but instead on his knowledge, acquired through many trainings and robust experience.

In addition to completing three training programs, Mr. Hutt instructs and trains law students, lawyers, and other professionals on the use of force through his role as an investigator

at the Multnomah County office of the Metropolitan Public Defender. Through his job at the

Metropolitan Public Defender, Mr. Hutt has reviewed and investigated hundreds of cases where

use of force was involved. He has developed a significant body of knowledge and experience

that he may draw upon when forming his expert opinion about the factors that go into a decision

to use force and the de-escalation or defensive tactics that are available.

Although such experience as Defendants suggest is necessary for admission of expert

testimony would likely increase the weight of Mr. Hutt's opinion in the eyes of the jury, its

absence does not render his opinion inadmissible. Defendants will be able to cross-examine

Mr. Hutt on the issues related to his qualifications and experience. It is the province of the jury,

rather than the Court on a *motion in limine*, to evaluate how the purported deficits in Mr. Hutt's

qualifications might affect the weight that should be given to his testimony. Upon a thorough

review of Mr. Hutt's credentials and experience, the Court finds that he is qualified to testify as

an expert on the issue of use of force.

Defendants also have argued that Mr. Hutt's testimony is not reliable because he has not

reviewed Plaintiff's or the Newberg High School Principal's deposition testimony. Mr. Hutt

asserts, in his deposition, that he bases his opinions regarding Plaintiff and Plaintiff's family's

accounts on non-sworn statements. Beyond Mr. Hutt's initial summary of events where he

occasionally describes the version events as relayed by Plaintiff and his family, Mr. Hutt's

opinions regarding Officer Rapet's actions are based almost entirely on Officer Rapet's own

deposition testimony and official reports. Basing his opinion of the actions taken by a defendant

on the deposition testimony of that defendant does not render Mr. Hutt's expert testimony

unreliable. Importantly, Mr. Hutt explicitly discusses in his report the ways in which Officer

Rapet's own accounts should be interpreted and understood and does not rely on Plaintiff's or

any observers' accounts when discussing Officer Rapet's actions. If Defendants seek to cross-examine Mr. Hutt regarding statements made by Plaintiff in Plaintiff's deposition testimony, they will be allowed to do so.

Defendants also argue that Mr. Hutt acknowledged that someone reviewing action in hindsight is in a better position to analyze the existence of a threat. The Court fails to see how Mr. Hutt's acknowledgement that an officer making decisions must act with less time for reflection than a testifying expert makes the expert's opinion misleading. To the contrary, such nuance shows that Mr. Hutt is presenting a realistic picture to the jury of how to apply his opinions using the *Graham v. Connor* standard of a reasonable officer on the scene. *See* 490 U.S. 386, 396 (1989).

Finally, Defendants argue that Mr. Hutt refers to standards in use in other jurisdictions but not in the City of Newberg. Whether the only relevant standards are the City of Newberg's is a legal conclusion not for Mr. Hutt, but which Defendants may argue to the Court or the jury, as appropriate. As discussed above, reliance on standards or sources other than the City of Newberg's Police policies does not render Mr. Hutt's opinion unreliable or "nonsense."

## CONCLUSION

Defendants' motion *in limine* (ECF 55) is DENIED.

**IT IS SO ORDERED**.

DATED this 12th day of April, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge